## CROW *v.* SOUTHERN RAILWAY COMPANY.

Under the evidence it was for the jury to determine whether it was negligence to obstruct the highway, and whether the death of the plaintiff's daughter resulted from becoming wet and chilled while standing in the rain waiting for the crossing to be cleared, and was proximately caused by the blocking of the highway. It was error to direct a verdict for the defendant.

JUNE 13, 1911.

Action for damages. Before Judge Maddox. Floyd superior court. April 13, 1910.

*M. B. Eubanks* and *W. B. Mebane,* for plaintiff.

*Maddox, McCamy & Shumate* and *George A. H. Harris & Son,* for defendant.

EVANS, P. J. Mrs. Cornelia Crow brought suit against the Southern Railway Company to recover damages because of the death of her minor daughter, alleged to have resulted from exposure to inclement weather while waiting for the clearance of a freight-train which blocked the highway between the daughter's place of work and her home. On the trial evidence was submitted by the plaintiff and the defendant; at the conclusion of which the court directed a verdict. The exception is to the direction of a verdict. The material part of the evidence submitted by the plaintiff was as follows: The plaintiff's daughter, a strong and healthy girl of the age of eighteen, was employed in a factory located in a town of five thousand inhabitants, and earned one dollar per day, most of which she contributed to her mother's support. The factory employed about two thousand operatives, and suspended work at the usual time (about fifteen minutes past six o'clock) on the evening of November 22, 1907. It was a cold, rainy night. When the plaintiff's daughter came out of the mill "it was raining as hard as it could." She, with many others of the mill operatives, came through the mill-gate and proceeded along the highway on her way home until she reached the spur-track of the railway company which entered the mill-yard, and which was thirty yards distant from the mill-gate. The highway was obstructed at this place by a freight-train with thirty cars,

half of the train projecting on either side of the highway.  Inside of the factory enclosure and near the gate, about forty yards from the railroad crossing, there is a waiting-shed.  There is also a hotel near the crossing about the same distance as the waiting-shed.  She waited in the rain for about thirty or forty minutes for the crossing to be cleared, when she proceeded home.  One witness testified that it would have been difficult, and not a safe way, for ladies to have gone around the train; and another witness testified that she could not go around the cars.  After the employees leave, the gates of the factory yard are shut and locked, and no one except the night-watchman is permitted to enter the yard.  When the plaintiff's daughter came out of the mill and discovered that it was raining and that the crossing was blocked, she could have returned to the yard and have taken shelter under the shed before the gate was shut.  There was a means of exit from the rear of the mill, but a person must needs go under a railroad trestle and it would have been three hundred yards further to the plaintiff's home.  The effect of becoming wet and chilled from standing in the rain was to suppress the menses of the plaintiff's daughter and to produce vicarious menstruation, which caused her death in June of the next year.  A physician testified that one is more likely to catch cold and contract disease standing still in the rain and becoming thoroughly wet than when walking in the rain.

The defendant submitted testimony, that the plaintiff's daughter died of tuberculosis; that she lived with her brother and sister-in-law, who died of tuberculosis; that this disease is a germ disease and communicable; that the freight-train had several heavy-laden cars and was switched into the siding to its extreme length, and as the engineer attempted to move the train forward a coupling on the third car from the engine broke; several unsuccessful attempts were made to connect the coupling, and then the car with the broken coupling was cut loose from the others, and signalmen sent out on the main line to flag approaching passenger-trains which were then due from opposite directions.  After arranging for the signals for the passenger-trains the car with the broken coupling was drilled out and left on a spur-track, and the engine was brought back and connected with the remaining cars and the crossing was cleared.  This work consumed about thirty or forty minutes, and could not have been accomplished in less time.  The conductor testified that

it was his duty to carry with his train chains with which to fix couplings; he had a chain with him, but it was left on a disabled car at the last stopping-place. If the servants in charge of the train had had a chain, the train could have been pulled off the crossing. The engineer and conductor did not inform any one in the waiting crowd at the crossing while it was obstructed by the train that the train was broken down and could not get away. They knew that the factory usually suspended work at six-fifteen o'clock in the afternoon; and that it employed a large number of operatives, many of whom lived in houses located beyond the crossing. The master mechanic of the factory testified that the night-watchman has until ten minutes to seven to permit employees to leave the mill, at which time he closes the gates. There could not have been much difference in the distance to the home of the plaintiff's daughter by leaving the front or rear exit. There was nothing to prevent the plaintiff's daughter, upon discovering that the crossing was blocked, from returning to the mill-yard and leaving through the back gate.

The plaintiff's case is based upon the propositions that the railway company was negligent in blocking the crossing, and that this negligent act proximately induced her daughter's fatal illness. We think both of these propositions were supported by proof sufficient to require the submission of the issues to a jury. It was inferable from the evidence that the crossing was blocked for a much longer time than would have been necessary had the servants of the railway company been provided with chains to use in substitution of a broken drawhead. The conductor testified that it was his duty to carry chains in anticipation of accidents to car-couplings; and that if the train had been supplied with a chain, the train could have been pulled off the crossing by its use. It is true that when the train started on its journey it was furnished with one chain, but this had been left on a disabled car, which was sidetracked at the last stopping-place. It was for the jury to say under these circumstances whether the crossing was negligently blocked an unreasonable time.

The other proposition contains two elements: (1) whether it is possible from the evidence to distinguish between the act of the defendant and the deceased as the cause of the injury; and (2) whether the proximate cause of the injury was the decedent's own negligence in voluntarily standing in the rain, when she could have

gone home by a different route or could have gained shelter in the hotel or shed which were near by. In considering this matter we must take the evidence in its most favorable aspect to the plaintiff; as a verdict was directed for the defendant, and she was deprived by this action of having the jury pass upon any conflicts in the evidence. We may concede that if between the cause of an injury from obstructing a highway the negligence of the injured person intervenes, so that the injury is the direct consequence of his negligence as well as the negligent obstruction of the highway, and it is not possible to determine what portion of the injury is caused by either, or that any substantial injury would have been received except for the negligence of the person injured, no action can be maintained for the injury. 5 Thomp. Neg. § 6237. But one who negligently causes an injury will not be heard to say that part of the mischief would not have arisen if the injured party had not been guilty of some negligence. If one negligently injures a person afflicted with disease, which injury aggravates or accelerates the course of the malady, he is still responsible for his tortious act. The injured person's affliction is to be considered in the estimate of damages, but does not excuse the tort-feasor's act. The plaintiff's evidence tended to show that the fatal illness of the decedent was caused from her standing in the rain upon a cold night. A physician testified that one is more likely to catch cold and contract disease standing still in the rain and becoming thoroughly wet than when walking in the rain. It was for the jury to say whether the decedent's voluntarily leaving the mill in the rain would have produced her illness if she had been permitted to walk home, instead of being detained in the rain for half an hour at the crossing.

Likewise the jury should have been allowed to pass upon the alleged contributory negligence of the decedent. It is inferable from the evidence that a mill shelter and a hotel were near by and accessible to the decedent; and that she could have repaired to either of these places while awaiting the clearance of the crossing. The evidence also discloses that while the train was blocking the crossing, the agents in charge of it, though seeing that a number of persons were delayed because of an obstructed highway, did not inform the waiting crowd of the cause of the delay, or when the train was likely to move. It did appear that the broken coup-

ling was on the third car, which was twelve car-lengths away from the crossing. The jury might have been of the opinion from the facts (and the inference would not have been unwarranted) that the decedent momentarily expected the crossing to be cleared, and that she was not negligent in remaining on that assumption, rather than going to a shelter or taking a more circuitous and less convenient route to her home.

       *Judgment reversed. All the Justices concur, except .*

Fish, C. J., and Beck, J., dissenting. In our opinion the evidence was wholly insufficient to show that the defendant's negligence was the proximate cause of the death of the plaintiff's daughter, and therefore the court properly directed a verdict for the defendant.